**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**APASHA A. BLOCKER,**

Plaintiff,

v.

**BROOKFIELD PROPERTIES LLC and FOUR UNIDENTIFIED SECURITY GUARDS,**

Defendants.

Civil No. 00-1459 (PAM/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Michael Mobley, Esq., for Plaintiff.

Karna A. Berg, Esq., for Defendants.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on May 1, 2001, on Defendant Brookfield Properties LLC's Motion for Dismissal with Prejudice (Doc. No. 23). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

The parties agree that the Complaint in this case should be dismissed. The sole issue before the Court is whether the Complaint should be dismissed with or without prejudice, both of which are permitted by Federal

FILED MAY 14 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Rule of Civil Procedure 41(b), the authority under which Defendant Brookfield Properties LLC ("Brookfield") moves to dismiss. Brookfield asks that this case be dismissed with prejudice because Plaintiff Apasha Blocker has intentionally disregarded court orders and rules, has caused unnecessary delays, and has wasted its and the Court's time. Plaintiff asks that the case be dismissed without prejudice because any deficiencies in prosecuting her case were caused by her mental illness and because dismissal with prejudice is too drastic a remedy.

**A. <u>The Incident and Resulting Lawsuit</u>**

On May 23, 2000, Plaintiff Apasha Blocker, an African American woman, was shopping at the Minneapolis City Center, which is owned and operated by Brookfield. At some point, she went into the women's restroom which was located down an L-shaped corridor. When Plaintiff exited the restroom, she encountered a male security guard who allegedly asked Plaintiff, "Can you freakin' read?". According to Plaintiff, the guard mistakenly believed she was a man. As Plaintiff attempted to pass the guard, he allegedly kicked her twice. One of Brookfield's security guards then told Plaintiff he had received complaints about men being in the women's restroom. Ms. Blocker said she was not a man. Nevertheless, three additional security guard approached Plaintiff and purportedly shoved her, bent her wrists and fingers backwards, hit her, kicked her, choked her, and dragged her into an elevator.

In the elevator, the guards allegedly continued to physically batter her and subjected her to racial slurs. The guards took Plaintiff to a holding area where they detained and questioned her. Eventually, Plaintiff was issued a trespass notice for disorderly conduct in the City Center.

On June 14, 2000, Plaintiff filed suit against Defendant Brookfield and four unidentified security guards for violating her statutory rights under 42 U.S.C. §§ 2000a, 1985, 1988, and Minn. Stat. § 363.03, subd. 3. Plaintiff also claimed vicarious liability, respondeat superior, false arrest, false imprisonment, intentional infliction of emotional distress, assault, and battery. Plaintiff demanded $1,300,000 in compensatory damages and injunctive relief.

At the time of the incident, Ms. Blocker was a talented track and field athlete and a graduate student at the University of Minnesota. Her attorney issued a press release regarding the alleged assault, and there were at least thirty-four stories on local television channels, as well as stories in newspapers and on the Internet. Presumably, much of the media interest resulted because of Plaintiff's track and field accomplishments and her future plans to compete in international and nationwide events.

**B. Plaintiff's Mental Health**

It is unclear precisely when Plaintiff Blocker began experiencing serious mental health difficulties, but the first incident relevant to this lawsuit occurred on December 8, 2000, when the Honorable Patricia L. Belois of

Hennepin County District Court issued an Order for Commitment as Mentally Ill. (Pl. Ex. 4.) Plaintiff was involuntarily committed to the Hennepin County Medical Center and the Anoka Metro Regional Treatment Center. Judge Belois found that Plaintiff had been diagnosed with psychosis: a psychiatric disorder affecting her thoughts, mood, perception, judgment, behavior, capacity to recognize reality, and ability to reason or understand. (Id.) Judge Belois also concluded that Plaintiff "engages in grossly disturbed behavior or experiences faulty perceptions" and "cannot attend to the activities of daily living without supervision and direction from health care providers." (Id.) In addition, an Inpatient Progress Note from the Hennepin County Medical Center dated January 11, 2001, indicates that Ms. Blocker also suffers from schizophrenia. (Berg Aff. of April 3, 2001 Ex. E.)

During her hospitalization, Plaintiff was permitted to attend to personal and legal matters. She was given passes to leave the hospital for a variety of reasons, including attending to legal matters, and she was permitted to receive visitors. On January 2, 2001, Plaintiff was discharged to the Anoka County Contract Program, from which she was provisionally discharged on January 29, 2001. After her discharge, Ms. Blocker returned to her family home in New York. She remains under the provisional discharge until June 8, 2001. Plaintiff's counsel acknowledges that his client suffers from a serious

mental illness and has represented to the Court that her illness prevents her from competently prosecuting her claims.

### C. Procedural History of This Case

After being served with the Complaint, Brookfield began investigating Plaintiff's claims. Brookfield served Plaintiff with interrogatories and requests for document production on September 14, 2000. The interrogatories asked for medical information concerning Plaintiff's mental and physical conditions and for a computation of Plaintiff's damages. The document requests asked for relevant medical records, and Brookfield included a Patient Authorization form which would permit it to obtain Plaintiff's medical records. Brookfield claims that Plaintiff's responses contained incomplete medical records; however, a signed Patient Authorization form was included. Brookfield later discovered that the signature on the form was not Apasha Blocker's. Despite confronting Plaintiff's counsel with this fact, Brookfield was unable to obtain a valid Patient Authorization form. Furthermore, in spite of repeated requests, Brookfield has not received information regarding medical examinations and treatment provided to Plaintiff prior to 1995. Brookfield subsequently served Plaintiff with a second and third set of discovery, none of which was responded to by Plaintiff. Plaintiff has repeatedly failed to reply to letters sent by Defendant regarding the deficiencies in her discovery responses.

However, Brookfield has not filed a motion to compel with respect to the above-mentioned discovery.

By Plaintiff's counsel's own admission, Plaintiff's contact with Mr. Mobley has been sporadic at best. For example, on December 8, 2000, Mr. Mobley told Defendant's counsel that Plaintiff refused to speak with him and was not accessible or cooperative. (Berg Aff. of April 3, 2001 ¶ 3.) At a settlement conference on March 19, 2001, which Plaintiff did not attend despite being so ordered by this Court, her lawyer admitted he had not been in contact with Plaintiff since December 2000. Moreover, Plaintiff's counsel has twice represented to Brookfield that Plaintiff intended to obtain new counsel, (Berg Aff. of Apr. 3, 2001 ¶¶ 2, 3), but Plaintiff has not yet hired a new lawyer.

Regarding the thwarted settlement conference, Plaintiff's counsel informed the Court in a letter dated March 13, 2001 that Plaintiff would not attend. Counsel implied that the nonattendance was due to the commitment order "involuntarily hospitalizing" Plaintiff. It is now clear that Plaintiff was not hospitalized in Minnesota on the date of the conference, but was in New York.

## II. DISCUSSION

### A. <u>Dismissal With or Without Prejudice</u>

Defendant Brookfield moves to dismiss this case with prejudice pursuant to Fed. R. Civ. P. 41(b), which permits dismissal for lack of prosecution:

> **Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication on the merits.

Brookfield asserts that Plaintiff has failed to participate in litigation and has offered no reliable medical evidence that she lacks the mental capacity to prosecute her case. Furthermore, Brookfield contends that it will be adversely affected if the case is dismissed without prejudice because it could be exposed to future litigation costs and inconvenience. If the motion to dismiss is granted without prejudice, Brookfield asks the Court to require Plaintiff to pay Brookfield's costs and fees as a condition to refiling a lawsuit involving the same claims.

Plaintiff responds that she has largely complied with the Federal Rules of Civil Procedure and court orders in prosecuting her case and that any violations were caused by her mental illness and were therefore unintentional. Moreover, Plaintiff observes that Defendant has never even requested sanctions, such as an order compelling discovery, for noncompliance with discovery or other rules.

After carefully examining the circumstances in this case, the Court recommends that Plaintiff's case should be dismissed <u>without</u> prejudice. Dismissal without prejudice is not an adjudication on the merits. <u>See</u> <u>Semtek</u>

Int'l Inc. v. Lockheed Martin Corp., 121 S. Ct. 1021, 1026 (2001). Thus, Plaintiff would not be barred from returning to the federal court with the same claims. See id. at 1027. On the other hand, "dismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." Hunt v. City of Minneapolis, 203 F.3d 524, 527 (8th Cir. 2000) (citing Hutchins v. A.G. Edwards & Sons, Inc., 116 F.3d 1256, 1260 (8th Cir. 1997)). Moreover, dismissal with prejudice should be ordered only when lesser sanctions prove ineffectual. See Hunt, 203 F.3d at 527 (quoting Rodgers v. Univ. of Mo., 135 F.3d 1216, 1222 (8th Cir. 1998)). Finally, the sanction must be proportionate to the plaintiff's transgression. See Mann v. Lewis, 108 F.3d 145, 147 (8th Cir. 1997).

It is undisputed that Plaintiff suffers from a mental illness, and the language of Judge Belois in the commitment order demonstrates the significant effects of her illness. While Plaintiff at times was unresponsive to or provided insufficient answers to Brookfield's discovery requests, the consequences were no different from routine discovery disputes. The Court observes that Brookfield usually considered the discovery issues too insignificant to warrant court intervention. Furthermore, while Ms. Blocker could not be considered an aggressive litigant, she did prosecute her case. She served discovery requests and investigated relevant issues. Brookfield has deposed Plaintiff and at least

one other witness, Ms. Alice Norris. The period for discovery does not end until November 1, 2001, during which time Plaintiff could further engage in discovery and prosecute her case.

In addition, on January 8, 2001, Plaintiff herself moved to amend the pretrial scheduling order and extend all dates by 180 days because of her mental condition. Thus, Plaintiff was aware of her illness's effect on the prosecution of her case, and she sought assistance of the Court to mitigate that effect. This Court found Plaintiff showed good cause to amend the pretrial schedule because of her mental illness.

Perhaps Plaintiff's greatest transgression, in the opinion of this Court, was her absence at the settlement conference on March 16, 2001, which was in direct violation of this Court's Order of February 15, 2001. While Plaintiff never received the Court's permission to miss the conference, Plaintiff's counsel did notify the Court and defense counsel by letter of March 13, 2001 that Plaintiff would not attend. Plaintiff's counsel insinuated that Ms. Blocker's absence was due to her "involuntarily hospitalization." This implication was a knowing misrepresentation; counsel knew Plaintiff was no longer hospitalized, but was in New York. It is unclear whether Plaintiff was even told of the settlement conference. Given Plaintiff's mental condition, the advance notice of the absence, and counsel's possible responsibility for Plaintiff's nonattendance,

the Court finds that dismissal with prejudice would be disproportionate to her transgression.

As to Brookfield's argument that it will be prejudiced if the Complaint is dismissed without prejudice, prejudice to a defendant is a lesser consideration than the plaintiff's conduct prompting the motion. See Omaha Indian Tribe, Treaty of 1854 with the United States v. Tract 1 – Blackbird Bend Area, 933 F.2d 1462, 1468 (8th Cir. 1991) (citations omitted). The Court finds that Brookfield has not demonstrated potential prejudice severe enough to overcome all other factors and warrant dismissal with prejudice.

In conclusion, there is insufficient evidence that Plaintiff willfully disobeyed court orders or persistently failed to prosecute her case so as to merit dismissal with prejudice. Lesser sanctions have not even been sought, much less proven to be futile. Accordingly, the Court recommends that the Complaint be dismissed without prejudice.

## B. Payment of Costs if Plaintiff Commences a Future Action

Rule 41(d) provides for the award of costs when a plaintiff dismisses a case:

> **Costs of Previously-Dismissed Action.** If a plaintiff who has once dismissed an action in any court commences an action against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Brookfield contends that it has incurred significant litigation costs, in part caused by Plaintiff's numerous communications to the media and public appearances, which prompted Brookfield to respond to the negative publicity. Brookfield claims its attorneys' fees exceed $149,069.85, and its costs exceed $28,108.04. (Berg Aff. of Apr. 27, 2001 ¶¶ 2, 3.) At the motion hearing, the Court asked Brookfield's counsel to provide an affidavit detailing the exact costs and fees incurred in this case thus far. Counsel indicated she would provide the affidavit to the Court forthwith. However, as of the date of this Order, no such affidavit has been filed with the Clerk of Court or sent to this Court's chambers.

The Court finds that if Plaintiff commences another action against Brookfield in state or federal court, an order for the payment of some costs and fees incurred in this action would be appropriate. One of the purposes of Rule 41(d) is to compensate a defendant for duplicative litigation costs. Here, the Court presumes that a significant portion of Brookfield's costs and fees was incurred in dealing with the media and proceeding with discovery, matters which Brookfield will not have to duplicate if Plaintiff files a future lawsuit.

Thus, the Court finds that a reasonable amount of costs and fees to assess Plaintiff upon filing another lawsuit is $1500.00.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss with Prejudice (Doc. No. 23) be **GRANTED** as to dismissal, but **DENIED** as to dismissal with prejudice. The Complaint should be **DISMISSED WITHOUT PREJUDICE** on the condition that Plaintiff Apasha Blocker will reimburse Defendant Brookfield Properties LLC in the amount of $1500.00 if she refiles her case.

Dated: May 14, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 1, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.